**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Brian Kaibel, Daniel Dotse,<br>Garfield Campbell, and<br>Rick Iskierka, | Civil No. 11-1231 (SRN/JJK) |
| **Plaintiffs,** | **MEMORANDUM AND ORDER** |
| v. | |
| Municipal Building Commission,<br>Mike Opat, individually and in his<br>representative capacity,<br>R.T. Rybak, individually and in his<br>representative capacity, Mark Stenglein,<br>individually and in his representative<br>capacity, and Lisa Goodman, individually<br>and in her representative capacity, | |
| **Defendants** | |

_____

Daniel W. Schermer, Daniel W. Schermer, P.A., 700 Lumber Exchange Building, 10 South 5th Street, Minneapolis, Minnesota 55402, and Judith K. Schermer, Judith K. Schermer, PLLC, 10 South Fifth Street, Suite 700, Minneapolis, Minnesota 55402

Amanda M. Trelstad and Timothy S. Skarda, Minneapolis City Attorney's Office, 350 South Fifth Street, Room 210, Minneapolis, Minnesota 55415, for Defendants Municipal Building Commission, Rybak and Goodman; Charles H. Salter, Hennepin County Attorney's Office, A2000 Hennepin County Government Center, 300 South Sixth Street, Minneapolis, Minnesota 55487, for Defendants Opat and Stenglein

_____

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiffs' Petition for a Writ of Mandamus [Doc. No.

1

6].[1]  Defendants oppose the issuance of a writ.  For the reasons set forth herein, Plaintiff's petition is granted, to the extent that this Court grants an alternative writ of mandamus.

## I.      BACKGROUND

Plaintiffs are former tenured security officers who worked in the Minneapolis City Hall building and were employed by Defendant Municipal Building Commission ("MBC") until their discharge in March 2011.[2]

In legislation passed in 1903, the Minnesota Legislature created the MBC, which was charged with the care of the Hennepin County and Minneapolis Courthouse and City Hall buildings.  Minn. Stat. § 383B.751 (1903) (the "MBC Statute").  The MBC is made up of four members who, for the period relevant to this litigation, include Hennepin County Commissioners Mike Opat and Mark Stenglein, Minneapolis Mayor R.T. Rybak, and Minneapolis City Council Member Lisa Goodman.  The MBC members are Defendants in this litigation.  The Minnesota Legislature later revised the same statute that created the MBC to include certain protections available to tenured MBC employees upon termination:

> Persons employed by the municipal building commission on or before August 1, 1977, or thereafter, and having at least six months service, shall have tenure based on length of service. . . . No employee after six months continuous employment shall be removed or discharged except upon a majority vote of the members of the municipal building commission for cause, upon written charges and after an opportunity to be heard at a hearing conducted by the municipal building commission.  The Minneapolis civil service rules relating to cause for removal shall govern.  An employee removed for cause may appeal to district court, which decision shall be final.

---

[1]  The Court refers to the moving party herein as "Plaintiffs," although for purposes of the instant matter before the Court, they would be considered "Petitioners."

[2]  Plaintiff Kaibel held the position of security supervisor, while Dotse, Campbell and Iskierka were security officers.  (See Letter of 2/3/11 from J. Cervantes to B. Kailbel, Ex. A to Schermer Aff.; Letter of 2/16/11 from J. Cervantes to D. Dotse, Ex. B to Schermer Aff.)

Minn. Stat. § 383B.751 (2010).

At the request of the MBC, in late 2009, Minneapolis city employees provided a summary of the City's "baseline security needs for the City Hall/Courthouse facility."  (See Letter of 12/16/09 from A. Thomas to M. Opat & Executive Summary at 1, Ex. 1 to Affidavit of Tim Skarda.)   In prefatory remarks regarding the options for improving security, the authors of the report, Art Thomas, City of Minneapolis Security Manager, and Greg Goeke, Director of Property Services, noted certain perceived shortcomings of the security program in place at the time:

> The key to an effective baseline security program is having a dedicated, properly-trained and educated security supervisor/manager to lead the program.  It is the opinion of the City's staff that the current MBC Security and Custodial Manager does not posses [sic] the skill set needed for a successful program.  The current security staff will continue to lack the proper training and professional direction needed to be successful at their jobs.  This will leave both the City and the County at risk.

(Id. at 3.)   The authors identified the following three options for improvement in security services: (1) improving the security services provided by the MBC; (2) utilizing the City's Security Management staff to develop and implement improved security; and (3) using Hennepin County's security staff.  (Id. at 3-4.)  Noting that Hennepin County had been involved in a successful transition with the City's Library Board, the authors commented that "[s]imilarly, MBC could be transitioned into County employment if deemed to be in the best interest of the involved parties."  (Id.)  The authors of the report recommended the implementation of Option 3, i.e., utilizing Hennepin County's security services, yet contemplated the retention of MBC security staff, stating, "The County's training program is exemplary and employees would have promotional opportunities."  (Id.)   In a Hennepin County Board "Action Request" describing the

transition of security services at the City/Hall Courthouse from MBC to the County, the

document provides that "[e]xisting MBC security employees will have the opportunity to apply

for Hennepin County security positions but are not given preference or guarantee of county

employment." (Hennepin Cty. Bd. Action Request, Ex. J to Schermer Aff.)

      In December 2010, the MBC voted to approve the new approach for providing security

services by contracting with Hennepin County for 2011 security services. (12/16/10 MBC

Meeting Minutes, Ex. H to Aff. of Judith Schermer [Doc. No. 9-1].) The MBC therefore

entered into an agreement with Hennepin County for the provision of security services for the

City Hall/Courthouse. (Agmt., Ex. K to Schermer Aff.)

      Plaintiffs were advised by letter in February 2011, that they would be laid off from their

respective MBC security positions effective March 12, 2011. (See, e.g., Letter of 2/23/11 from

J. Cervantes to B. Kaibel, Ex. A to Schermer Aff.). The MBC advised Plaintiffs of their right to

request a hearing pursuant to the Veterans' Preference Act, if applicable, if they believed that the

layoff was not in good faith. (Id.)

      Plaintiff Kaibel apparently asked for a hearing before the MBC, but the MBC denied his

request "[d]ue to the circumstances surrounding [his] layoff." (Letter of 3/9/11 from J.

Cervantes to B. Kaibel, Ex. E to Schermer Aff.) The MBC advised Kaibel of his right under

Minn. Stat. § 179A.25 to contest his layoff by presenting a grievance to the Commissioner of the

Bureau of Mediation Services. (Id.) Plaintiffs Dotse, Iskierka and Campbell likewise sought a

hearing before the MBC, but were told that they were not entitled to such a hearing and could

instead contact their union representatives in order to contest their layoffs. (Letter of 3/3/11

from J. Cervantes to D. Dotse, Ex. F to Schermer Aff.; Letter of 3/3/11 from J. Cervantes to R.

Iskierka, Ex. G to Schermer Aff.; Letter of 3/3/11 from J. Cervantes to G. Campbell, Ex. 7 to

Affidavit of Tim Skarda.)   Plaintiffs Dotse and Campbell applied for security officer positions

with Hennepin County, but neither proceeded to the final interview stage.  (Letter of 5/2/11 from

L. Shimmin to D. Dotse, Ex. L to Schermer Aff.; Email of 3/11/11 from K. Comstock to G.

Campbell, Ex. M to Schermer Aff.)  It is apparently undisputed that Defendants have not paid

Plaintiffs wages since March 12, 2011.

On May 9, 2011, Plaintiffs brought suit in Hennepin County District Court, alleging that

under Minn. Stat. § 383D.751, Defendants were not permitted to remove Plaintiffs from

employment without a majority vote of the MBC for cause, upon written charges, after having an

opportunity to be heard at a hearing before the MBC.  Plaintiffs seek the issuance of a writ of

mandamus that would require Defendants to reinstate Plaintiffs to their former positions

retroactive to the date of their discharge, pay the Plaintiffs their unpaid wages and benefits

retroactive to the date of their discharge, and pay Plaintiffs' reasonable attorney's fees and costs.

(Petition for Writ of Mandamus & Compl. ¶¶ 1-9, Ex. 2 to Notice of Removal [Doc. No. 1-2].)

In addition, Plaintiffs allege a claim for the violation of 42 U.S.C. § 1983 and a claim for unpaid

wages pursuant to Minn. Stat. § 181.10, § 181.13, and § 181.171.  (Id. ¶¶ 10-15; ¶¶ 16-19.)   On

May 11, 2011, Defendants removed the case to this Court.  (Notice of Removal [Doc. No. 1].)

Defendants oppose Plaintiffs' Petition for a Writ of Mandamus, arguing that mandamus

is inappropriate because Defendants are under no legal duty to retain Plaintiffs, nor have

Defendants failed to comply with a legal duty.  Defendants contend that Plaintiffs' former

positions have been eliminated.  Morever, Defendants argue that the decision to eliminate

Plaintiffs' positions was entirely within their discretion and mandamus may not be used to

compel a ministerial act.  Defendants also argue that Minn. Stat. § 383D.751 requires a hearing

only when an employee is terminated for cause and that Plaintiffs have an adequate remedy at

law.

At the hearing on Plaintiffs' petition, counsel for Defendants characterized Plaintiffs'

jobs as having been "eliminated," arguing that "elimination" removes Defendants' actions from

the MBC statute, Minn. Stat. § 383.751.   Following the hearing, the parties engaged in

discovery limited to the issue of whether the security positions at the City Hall/Courthouse

Building had been eliminated.  On September 1, 2011, counsel for Plaintiffs filed supplemental

exhibits with the Court, consisting of six documents.  (Letter of 9/1/11 from J. Schermer to Judge

Nelson [Doc. No. 48]; [Second] Affidavit of Judith K. Schermer [Doc. No. 49], attaching Exs. 1-

6.)

Defendants object to both the submission of this discovery, and, to the extent that

Plaintiff's transmittal letter contains legal argument, to the submission of additional argument as

procedurally improper.  (Letter of 9/6/11 from T. Skarda to Judge Nelson [not docketed].)  While

the Local Rules do not permit the submission of unsolicited memoranda without the Court's

leave, L.R. 7.1(g), the Court will consider the exhibits.  At the hearing, counsel and the Court

referred to the possibility of taking limited discovery on the issue of job elimination.  The

supplemental exhibits consist of written discovery responses prepared by Defendants and

document discovery on this very issue, along with a letter from defense counsel to Plaintiffs'

counsel, responding to Plaintiffs' concerns regarding the written discovery responses.

Defendants are familiar with the contents of the exhibits, and the total volume consists of only

26 pages.  The six exhibits are therefore helpful to the Court in resolving the pending petition

6

and such discovery was contemplated by the parties and the Court at the hearing.  However, to

the extent that Plaintiffs' counsel's transmittal letter contains additional legal argument, the

Court will not consider it, as additional legal argument is not permitted under the Local Rules.

## II.   DISCUSSION

Under Minnesota law,  two types of mandamus writs may issue.  A peremptory writ is

allowed where "the right to require performance of the act is clear, and it is apparent that no

valid excuse for nonperformance can be given . . . ."  Minn. Stat. § 586.04.  An alternative writ

commands a defendant to perform a particular act or show cause before the court as to why such

performance is not required.  Minn. Stat. § 586.03.  Upon issuance of an alternative writ, the

defendant may "answer in the same manner as an answer to a complaint in a civil action."[3]

Minn. Stat. § 586.08.   Although the issuance of a writ of mandamus is not a common

proceeding, Minnesota courts have historically considered relief in mandamus on occasions such

as this, where public employees allege that their dismissal, or adverse employment action, was in

violation of various applicable civil service laws.  See Schiltz v. City of Duluth, 449 N.W.2d 439,

440 (Minn. 1990) (holding that a motion for a new trial in a mandamus proceeding is authorized

and appealable in a mandamus proceeding brought by a discharged public employee seeking

reinstatement and back pay);  Stubben v. Bd. of Cty. Commissioners of Hennepin Cty., 141

---

[3]  The federal mandamus statute is similar to Minnesota's.  The Mandamus Act provides
that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus
to compel an officer or employee of the United States or any agency thereof to perform a duty
owed to the plaintiff." 28 U.S.C. § 1361.  A court may only "grant a writ of mandamus in
extraordinary situations and only if: (1) the petitioner can establish a clear and indisputable right
to the relief sought, (2) the [respondent] has a nondiscretionary duty to honor that right, and (3)
the petitioner has no other adequate remedy." Castillo v. Ridge, 445 F.3d 1057, 1061-61 (8th
Cir. 2006).  Moreover, "whether a writ of mandamus should issue is largely a matter within the
district court's discretion." Id.

N.W.2d 499, 500 (Minn. 1966) ("Mandamus or relief in the nature of mandamus lies to compel an appointing authority to reinstate an officer removed from his position in violation of laws that entitled him to retain the office or to a hearing before discharge."); Spurck v. Civil Service Bd., 32 N.W.2d 574, 582 (Minn. 1948) (referring to companion mandamus action in which public employee challenged job title/classification level); State ex. rel. Jenkins v. Ernest, 268 N.W. 208, 209 (Minn. 1936) (observing that it is "well settled that a writ of mandamus brought against the proper appointing authority or authorities is the appropriate remedy to compel reinstatement when an officer or appointee has been discharged, and if it is shown that his dismissal was in violation of the civil service laws, he will be restored to his former position.")

Minnesota law requires that a writ of mandamus "shall not issue in any case where there is a plain, speedy, and adequate remedy in the ordinary course of law."  Minn. Stat. § 586.02. Defendants argue that Plaintiffs have claims for damages and adequate remedies at law.[4]  The Court finds that the requirement that a mandamus petition not issue absent a plain, speedy and adequate legal remedy is met here.  Minn. Stat. § 586.02.   In filing the instant petition, Plaintiffs made clear that they sought an expedited and emergency hearing (Letter of 5/16/11 from J. Schermer to Judge Nelson [Doc. No. 3]).  Furthermore, of Plaintiffs' claims, only the

---

[4] In a similar vein, Defendants argue that Plaintiffs must make a showing of irreparable harm, citing to Sampson v. Murray, 415 U.S. 61, 91-92 (1974), in which the Supreme Court found that injury to reputation and loss of income did not constitute irreparable harm sufficient for the issuance of a TRO, and Miller v. Foley, 317 N.W.2d 710, 714 (Minn. 1982) (applying Sampson standard of irreparable harm to standard for a TRO and finding that plaintiffs failed to demonstrate entitlement to TRO).  While a showing of irreparable harm is certainly a factor considered in the context of a motion for a TRO or preliminary injunction, see Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981), Defendants cite to no authority, nor is the Court aware of any, that requires the showing of irreparable harm for issuance of a writ of mandamus.   Instead, the Court confines its analysis to the requirements, noted above, for a writ of mandamus.

8

claim seeking a writ of mandamus contains the equitable relief of reinstatement.  (Petition for

Writ of Mandamus & Compl., Count I  [Doc. No. 1-2].)  This form of relief is not included in

Plaintiffs' claims for damages under 42 U.S.C. § 1983 and Minn. Stat. §§ 181.10, 181.13 and

181.171.  (Id., cf. Count I & Counts II & III.)  Accordingly, because there is no remedy that is

sufficiently "plain, speedy or adequate,"absent issuance of a writ of mandamus, the Court will

consider the merits of Plaintiffs' petition.

        Plaintiffs base their right to relief on the MBC statute.  The plain language of Minn. Stat.

§ 383.751 provides that "[n]o employee after six months continuous employment shall be

removed or discharged except upon a majority vote of the members of the municipal building

commission for cause, upon written charges and after an opportunity to be heard at a hearing

conducted by the municipal building commission."  Minn. Stat. § 383B.751.  Under Minnesota

canons of statutory construction, "[w]hen the words of a law in their application to an existing

situation are clear and free from all ambiguity, the letter of the law shall not be disregarded

under the pretext of pursuing the spirit."  Minn. Stat. § 645.16.  While Defendants construe the

statute to provide a hearing only to employees who have been eliminated for cause, the Court

disagrees.  The language of the statute dictates otherwise: the statute applies to all tenured MBC

employees, who may not be removed, except for cause, upon the vote of the MBC, pursuant to

written charges, following a hearing.   The statute is unambiguous.  If the statute were meant to

provide for a hearing and written charges only upon the "for cause" discharge of an employee,

the statute would instead be worded as follows:  No employee after six months continuous

employment shall be removed or discharged for cause except upon a majority vote of the

members of the municipal building commission, upon written charges and after an opportunity

to be heard at a hearing conducted by the municipal building commission.  The statute is not so worded, however, and is not subject to Defendants' interpretation when a plain reading of the statute dictates otherwise.

Defendants argue that Plaintiffs' (and the Court's)  reading of the statute contradicts legislative intent by giving MBC employees greater protections than those afforded other civil servants.  It may be the case that the MBC statute provides greater protections, but if Defendants find the application of the statute to the facts of this case and future employment decisions untenable, their recourse is to persuade the Minnesota Legislature to modify or repeal the statute.  This Court's function is to apply the plain language of the statute to the facts of this case.

Defendants contend that the primary reasons for discharging Plaintiffs were to achieve greater economic efficiencies and better security services, which they characterize as discretionary decisions to which the MBC statute does not apply.   Thus Defendants characterize the switch to Hennepin County's provision of security services as an "elimination" of Plaintiffs' positions.  Defendants view an elimination or lay off as discretionary employment actions falling outside of the statute's applicability to "removal" or "discharge" employment actions.

MBC contracted with Hennepin County to provide the following services:

• Security staffing, on a 24 hour x 7 seven [sic] days a week basis, including patrol, emergency response and front desk coverage;
• Services involving general building security and assisting with development and implementation of tenant security programs;
• Security staffing for special events and public meetings as requested;
• Emergency response and risk mitigation services;
• Technology support to protect tenants, building and grounds including consulting, planning and repair;
• Central monitoring of life, safety and security systems;
• Basic public/customer information services during business hours.

(Agmt., Ex. K to Schermer Aff.)   Defendants admit that this is what the contract provides.

10

(MBC Defs.' Resp. to Pls.' Req. for Admissions, No. 4, Ex. 2 to (Second) Schermer Aff. [Doc. No. 49-2]; Defs. Opat & Stenglein's Resp. to Pls.' Req. for Admissions, No. 4, Ex. 4 to (Second) Schermer Aff. [Doc. No. 49-4].)

Defendants also admit that prior to the execution of the contract with Hennepin County, Plaintiffs provided certain of the security services for the MBC, but deny that Plaintiffs performed each and every service identified in the contract.  (Id., No. 5; id., No. 5.)  Elaborating on their responses, counsel for Defendants MBC, Rybak and Goodman represents that "Plaintiffs provided services that may be described in the same general terms as the services specified in the contract."  (Letter of 7/12/11 from T. Skarda at 2, Ex. 6 to (Second) Schermer Aff.  [Doc. No. 49-6].)

First, while Defendants argue that a true elimination of position renders the MBC statute inapplicable, the MBC statute contains no such written exception.  Not only is the statute straightforward, the Court is unaware of any legal authority addressing any aspect of the statute whatsoever.

Defendants cite to State ex rel. Boyd v. Matson, 193 N.W. 30, 32 (Minn. 1923), for the proposition that even where civil service statutes prohibit removing officials unless for cause, Minnesota courts have permitted such removal without cause where the position in question is abolished.   In Boyd, the Minnesota Supreme Court considered whether the "Soldier's Preference Act" provided certain protections to a St. Paul city telegraph operator whose position had been abolished.  Id. at 30-31.

> But it is well settled that statutes forbidding municipal officials from removing appointees except for cause are not intended to take away the power given such officials over the administrative and business affairs of the municipality, and do not prevent them from terminating the employment of an appointee by abolishing

the office or position which he held, if the action abolishing it be taken in good
faith for some legitimate purpose, and is not a mere subterfuge to oust him from
his position.

Id. at 32.

Subsequent decisions have cited Boyd in addressing whether a civil service position was

disbanded or eliminated.  See, e.g. State ex rel. Niemi v. Thomas, 27 N.W. 2d 155, 158 (Minn.

1947); Taylor v. City of New London, 536 N.W.2d 901, 903 (Minn. Ct. App. 1995), review

denied (Minn. 1995).  In Niemi, the Minnesota Supreme Court further noted that the elimination

of a position in name only would not constitute abolishing the position, stating, "Of course, the

village council, could not, under the pretext of abolishing the position, continue it under some

other name."  27 N.W.2d at 158.  Distinguishing the facts of Niemi from a pretextual situation,

the court stated, "Here, the abolished position was not promptly re-created; the duties therefore

were not assigned to some other department; there was no appointment of a village employee to

do the work formerly done by relator."  Id.   In Taylor, the Minnesota Court of Appeals

considered whether the City of New London's actions in disbanding their police department, and

contracting with Kandiyohi County to provide such services, were done in good faith.  In that

case, the city argued that their actions were strictly financially motivated.  536 N.W.2d at 903.

In affirming the ruling in the city's favor, the court found that the city had provided sufficient

direct evidence of their financial motivation for the abolition of the police department, in the

form of detailed financial information, consisting of budgets, testimony of city financial

employees, testimony from other counties, and other financial documents.  Id.  at 903-04.

Here, no courts appear to have addressed this issue as to the MBC statute.  However,

even if the elimination of job duties renders the MBC statute inapplicable, the record strongly

suggests that Plaintiffs' positions were not, in fact, "eliminated." Defendants admit that the general services provided by Plaintiffs are currently performed by Hennepin County staff. Moreover, the transfer in services was immediate, and, in general, Plaintiffs' duties were assigned to another department.  See <u>Niemi</u>, 27 N.W.2d at 148.  While Defendants do not concede that each Plaintiff performed each and every function currently provided by Hennepin County staff, Plaintiffs' positions cannot be considered truly "eliminated" if their general work is currently performed by Hennepin County staff.  Also, unlike <u>Taylor</u>, Defendants have not marshaled sufficient "direct evidence" of the motivation for their actions.  It appears that the decision was based on a combination of concerns regarding improvement in service and possible cost savings.  However, the record is not well-developed.[5]

The Court finds that Plaintiffs are entitled to the issuance of an alternative writ of mandamus.  The statute itself is clear.  The pleadings and the record reflect that Plaintiffs were tenured employees who were removed or discharged, not for cause, without written charges, and without a hearing.   The statute does not permit the removal of such employees without a majority vote for cause, upon written charges, with a right to hearing before the MBC.  However, in light of Minnesota authority providing some discretion for removal of public employees based on the elimination or abolishment of positions, it appears that a valid excuse for nonperformance <u>could</u> be given.  See Minn. Stat. § 586.04.  Defendants, however, have failed to provide

---

[5] While Defendants also argue that Plaintiffs have not adequately exhausted their remedies, the Court finds this argument unavailing.  The MBC statute contains no such provision requiring exhaustion of remedies and Minnesota's mandamus statute authorizes mandamus as a form of relief before "any inferior tribunal, corporation, board or person."  Minn. Stat. § 586.01. Moreover, Defendants informed Plaintiffs that they were not entitled to a hearing before the MBC Board and directed them to other avenues of relief.  (<u>See</u>, <u>e.g.</u>, Letter of 3/9/11 from J. Cervantes to B. Kaibel, Ex. E to Schermer Aff.)

sufficient evidence supporting their position that Plaintiffs' positions were, in fact, eliminated. Therefore, based on Defendants' obligations under Minn. Stat. § 383B.751, the Court orders Defendants to reinstate Plaintiffs and provide all requested mandamus relief within 20 days, or to show cause within 20 days why Defendants have not complied with the MBC statute. Defendants shall therefore make a return on the writ, with a certificate of having done so. Defendants may show cause by answer in the same manner as an answer to a complaint in a civil action.  Minn. Stat. § 586.06.  A full evidentiary hearing will follow.

Finally, Defendants raised arguments in their opposition memoranda in the nature of a motion to dismiss, arguing that Plaintiffs' non-mandamus claims fail as a matter of law.  (See MBC Defs.' Opp'n Mem. at 21-25.)  In addition, the individual Defendants argue that claims against them in their individual capacities should be dismissed. (Id.)   The resolution of these arguments is not necessary for determination of the instant petition for a writ of mandamus. Rather, Defendants' arguments are more properly before the Court in the form of a motion to dismiss, which Defendants filed subsequent to the hearing on the instant petition.  Because the Court has not yet heard argument on the motion, it will not address any 12(b)(6) arguments or related arguments asserted in opposition to the instant petition.

**THEREFORE, IT IS HEREBY ORDERED THAT**:

Plaintiffs' Petition for a Writ of Mandamus [Doc. No. 6] is **GRANTED**, to the extent that this Court grants an alternative writ of mandamus, issued separately, consistent with this Order.

Dated: November 2, 2011

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

14