# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Brian Kaibel, Daniel Dotse,<br>Garfield Campbell, and<br>Rick Iskierka, | Civil No. 11-1231 (SRN/JJK) |
| | |
| **Plaintiffs,** | **MEMORANDUM OPINION<br>AND ORDER** |
| v. | |
| Municipal Building Commission,<br>Mike Opat, individually and in his<br>representative capacity,<br>R.T. Rybak, individually and in his<br>representative capacity, Mark Stenglein,<br>individually and in his representative<br>capacity, and Lisa Goodman, individually<br>and in her representative capacity, | |
| **Defendants**. | |

_____

Daniel W. Schermer, Daniel W. Schermer, P.A., 700 Lumber Exchange Building, 10 South Fifth Street, Minneapolis, Minnesota 55402, and Judith K. Schermer, Judith K. Schermer, PLLC, 10 South Fifth Street, Suite 700, Minneapolis, Minnesota 55402

Amanda M. Trelstad and Timothy S. Skarda, Minneapolis City Attorney's Office, 350 South Fifth Street, Room 210, Minneapolis, Minnesota 55415, for Defendants Municipal Building Commission, Rybak and Goodman; Charles H. Salter, Hennepin County Attorney's Office, A2000 Hennepin County Government Center, 300 South Sixth Street, Minneapolis, Minnesota 55487, for Defendants Opat and Stenglein

_____

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiffs' Motion for Summary Judgment and

1

to Determine Attorneys' Lien [Doc. No. 78]; the Motion for Summary Judgment filed by

Defendants Mike Opat and Mark Stenglein [Doc. No. 84]; and the Motion for Summary

Judgment filed by Defendants the Municipal Building Commission ("MBC"), R.T.

Rybak, and Lisa Goodman [Doc. No. 89].   For the reasons stated below, Plaintiffs'

motion is denied, the motion filed by Opat and Stenglein is granted, and the motion filed

by the MBC, Rybak, and Goodman is granted in part, and denied in part.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Brian Kaibel, Daniel Dotse, Garfield Campbell, and Rick Iskierka are

tenured security officers who worked in the Minneapolis City Hall-Courthouse building

and were employed by the MBC until their discharge in March 2011.  The MBC is

charged with the care of the Hennepin County and Minneapolis City Hall-Courthouse

buildings by virtue of Minn. Stat. § 383B.751 (the "MBC statute").  The MBC consists of

four members who are individual Defendants in this action – Hennepin County

Commissioners Mike Opat and Mark Stenglein, Minneapolis Mayor R.T. Rybak, and

Minneapolis City Council Member Lisa Goodman.

The MBC statute provides certain protections to tenured MBC employees related

to termination:

> Persons employed by the municipal building commission on or before
> August 1, 1977, or thereafter, and having at least six months service, shall
> have tenure based on length of service. . . . No employee after six months
> continuous employment shall be removed or discharged except upon a
> majority vote of the members of the municipal building commission for
> cause, upon written charges and after an opportunity to be heard at a
> hearing conducted by the municipal building commission.  The Minneapolis

> civil service rules relating to cause for removal shall govern.  An employee
> removed for cause may appeal to district court, which decision shall be
> final.

Minn. Stat. § 383B.751 (2010).

In late 2009, at the request of the MBC, Minneapolis city employees provided a

summary of the City's "baseline security needs for the City Hall/Courthouse facility."

(See Letter of 12/16/09 from A. Thomas to M. Opat & Exec. Summ. at 1, Ex. 1 to

Affidavit of Charles H. Salter [Doc. No. 87-1].)   In prefatory remarks regarding the

options for improving security, the authors of the report, Art Thomas, City of

Minneapolis Security Manager, and Greg Goeke, Director of Property Services, noted

certain perceived shortcomings of the security program in place at the time:

> The key to an effective baseline security program is having a dedicated,
> properly-trained and educated security supervisor/manager to lead the
> program.  It is the opinion of the City's staff that the current MBC Security
> and Custodial Manager does not posses [sic] the skill set needed for a
> successful program.  The current security staff will continue to lack the
> proper training and professional direction needed to be successful at their
> jobs.  This will leave both the City and the County at risk.

(Id. at 2.)   The authors identified three alternative options for improving security services

at the Minneapolis City Hall-Courthouse: (1) improving the security services then

provided by the MBC; (2) utilizing the City's Security Management staff to develop and

implement improved security; or (3) using Hennepin County's security staff.  (Id. at 2-3.)

The report also contemplated the possible retention of existing MBC security staff.  (Id. at

3.)  Noting that Hennepin County had recently transitioned the City's existing library staff

in a similar shift in services to the county, the authors commented that "[s]imilarly, MBC

3

could be transitioned into County employment if deemed to be in the best interest of the involved parties.  The County's training program is exemplary and employees would have promotional opportunities." (Id.)  Of the three options for security services, the authors of the report recommended the third option – using Hennepin County's security services.  (Id.)  In December 2010, the MBC voted to approve the Hennepin County security services option.  (12/16/10 MBC Meeting Minutes at 3, Ex. 3 to Salter Aff. [Doc. No. 87-3].)

Plaintiffs were advised by letter in February 2011 that they would be laid off from their respective MBC security positions effective March 12, 2011.  (See, e.g., Letter of 2/23/11 from J. Cervantes to B. Kaibel, Ex. 3 to Notice of Removal [Doc. No. 1-3].)   The MBC advised Plaintiffs of their right to request a hearing pursuant to the Veterans' Preference Act, if applicable, if they believed that the change in their employment status was not made in good faith.  (Id.)

Plaintiff Kaibel apparently asked for a hearing before the MBC, but the MBC denied his request "[d]ue to the circumstances surrounding [his] layoff."  (Letter of 3/9/11 from J. Cervantes to B. Kaibel, Ex. 3 to Notice of Removal [Doc. No. 1-3].)  The MBC advised Kaibel of his right under Minn. Stat. § 179A.25 to contest his layoff by presenting a grievance to the Commissioner of the Bureau of Mediation Services.  (Id.)  Plaintiffs Dotse, Iskierka and Campbell likewise sought a hearing before the MBC, but were told that they were not entitled to such a hearing and could instead contact their union representatives in order to contest their layoffs.  (Letters of 3/3/11 from J.

Cervantes to D. Dotse, R. Iskierka, & G. Campbell, Ex. 3 to Notice of Removal [Doc. No. 1-3].)

In May 2011, Plaintiffs brought suit in Hennepin County District Court, alleging that under Minn. Stat. § 383D.751, Defendants were not permitted to remove Plaintiffs from employment without a majority vote of the MBC for cause, upon written charges, after having an opportunity to be heard at a hearing before the MBC. (Compl., Ex. 2 to Notice of Removal [Doc. No. 1-2].) Plaintiffs' action was filed as a Petition for a Writ of Mandamus, alleging a violation of Minn. Stat. § 383D.751, for which Plaintiffs sought reinstatement, back pay, and attorneys' fees, and as a Complaint, alleging violations of 28 U.S.C. § 1983 and certain provisions of Minnesota's Payment of Wages Act, under which Plaintiffs sought damages and attorneys' fees. (Id.) Defendants removed the case to this Court shortly after it was filed. (Notice of Removal [Doc. No. 1].)

Following a hearing on the Petition for a Writ of Mandamus, the Court issued a ruling on November 2, 2011, concluding that, based on the MBC statute, Plaintiffs were entitled to the issuance of an alternative writ of mandamus. (Order of 11/2/11 at 13 [Doc. No. 53].) The Court found that as tenured employees of the MBC, Plaintiffs were removed or discharged, not for cause, without written charges, and without a hearing, in violation of the Minn. Stat. § 383B.751. However, because Minnesota case law provided some discretion for the removal of public employees based on the elimination or abolishment of positions, the Court concluded that a valid excuse for nonperformance could be given. (Id.) (emphasis in original). But because the Court found that the record

5

was not well-developed as to whether Plaintiffs' positions had been legitimately eliminated, the Court presented Defendants with a choice. (Id. at 14.) Defendants could either reinstate Plaintiffs and provide them back pay, or they could show cause at a full evidentiary hearing as to why Defendants had not complied with the MBC statute. (Id.) The Court noted that its decision was based entirely on Plaintiffs' request for mandamus relief arising under the MBC statute, and did not address Plaintiffs' claims for relief arising under 42 U.S.C. § 1983 or their statutory claims for unpaid wages arising under the Minnesota Payment of Wages Act. (Id.)

In connection with its November 2 Order, the Court also issued an Alternative Writ of Mandamus [Doc. No. 54]. In the Writ, the Court noted that mandamus was the appropriate remedy to compel Plaintiffs' reinstatement to their former positions, and that pursuant to provisions in the Payment of Wages Act, Minn. Stat. § 181.101 and § 181.171, Plaintiffs were entitled to recover back wages and reasonable attorney's fees and costs. (Writ ¶ 13 [Doc. No. 54].) If Defendants chose to reinstate Plaintiffs and to provide back pay and all other lost compensation from the date of their discharge to the date of their reinstatement, the Writ permitted Plaintiffs' counsel to file a fee petition. (Id. at 4.)

On November 22, 2011, Defendants filed a Return to the Writ, indicating that they had chosen to reinstate Plaintiffs, providing them with no loss in their tenure and all applicable back pay and lost compensation. (Return to Writ at 2 [Doc. No. 55].) Defendants, however, expressed their opposition to any fee petition that Plaintiffs'

counsel might file.  (Id.)  Defendants promptly issued back pay checks to Plaintiffs, less

applicable taxes and other withholdings, including an offset for unemployment benefits.

(See Letter of 11/18/11 from T. Skarda to J. Schermer, Ex. 11 to Aff. of Daniel W.

Schemer [Doc. No. 82-1].)   The checks, which were issued directly to Plaintiffs, did not

include the names of Plaintiffs' counsel.  (D. Schermer Aff. ¶ 4 [Doc. No. 82]; Aff. of

Judith K. Schermer ¶ 4 [Doc. No. 81].)

     Plaintiffs' counsel filed their fee petition in December 2011.  (Petition for

Attorneys' Fees [Doc. No. 58].)   Plaintiffs' counsel based their petition for attorneys'

fees on a provision of the Payment of Wages Act, Minn. Stat. § 181.171, Subd. 3.  (Id.)

The Court denied Plaintiffs' fee petition, holding that the Court's November 2 ruling was

based solely on Plaintiffs' claims arising under the MBC statute, Minn. Stat. § 383B.751,

which contains no provision for an award of attorney's fees.  (Order of 4/17/12 at 4 [Doc.

No. 66].)  The Court explained, "The provisions of the Payment of Wages Act are

therefore inapplicable to a determination of whether attorney's fees are permissible, and

any statement to the contrary in this Court's Writ of November 2, 2011 [Doc. No. 54] was

incorrect, as it would be inconsistent with the basis for the Court's relief, which was

premised on the MBC statute, Minn. Stat. § 383B.751."  (Id.)

     The parties subsequently filed the instant cross motions for summary judgment.

Defendants contend that there are no genuine issues of material fact in dispute with

respect to Plaintiffs' § 1983 claim and Payment of Wages Act claim.  Accordingly, they

argue that they are entitled to summary judgment as a matter of law.  In addition, the

individual Defendants maintain that they are immune from suit under the doctrine of qualified immunity.  Conversely, in Plaintiffs' summary judgment motion, Plaintiffs contend that no genuine issues of material fact are in dispute as to their § 1983 and Payment of Wages Act claims and that they are entitled to summary judgment and to recover attorneys' fees.  If the Court declines to enter summary judgment in Plaintiffs' favor, they seek the imposition of an attorneys' lien against Defendants pursuant to Minn. Stat. § 481.13.

## II.   DISCUSSION

### A.   Summary Judgment Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  Enter. Bank v. Magna Bank of Missouri, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Id. at 323; Enter. Bank, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment

may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

**B.    Section 1983 Claim**

42 U.S.C. § 1983 provides for civil relief when an individual is deprived "of any rights, privileges, or immunities secured by the Constitution and laws" for such deprivations occurring "under color of law." 42 U.S.C. § 1983.  "To establish municipal liability under § 1983, a plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity."  Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009) (citing Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978)).  The Eighth Circuit has identified two general circumstances under which municipal liability will attach: "(1) where a particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted by 'deliberate indifference' to its known or obvious consequences."  Id. at 817-18 (citing Seymour v. City of Des Moines, 519 F.3d 790, 800 (8th Cir. 2002)).

As noted in Ditty v. City of Minneapolis, No. 11-CV-109 (MJD/FLN), 2012 WL 3870573, at *3 (D. Minn. Sept. 6, 2012), this Court has found a challenged employment action to be an "official policy" in a case where the City's reorganization plan was approved by the Ways and Means Committee, then adopted by the full City Council.  Id., at *3 (citing Dosdall v. City of Minneapolis, No. 05-CV-498 (JRT/FLN), 2007 WL

14354, at *2 (D. Minn. Jan. 3, 2007)).  The facts of <u>Ditty</u> were remarkably similar to

those in <u>Dosdall</u> – a reorganization plan was again approved by the Ways and Means

Committee, prior to approval by the City Council – and this Court in <u>Ditty</u> found that the

plaintiffs' positions were eliminated pursuant to an official municipal policy.  <u>Id.</u>

Similarly, here, as in <u>Dosdall</u> and <u>Ditty</u>, the challenged decision to change the provision

of security services at the Minneapolis City Hall/Courthouse was made pursuant to a plan

approved and adopted by the applicable governing body – the MBC Board.   Accordingly,

the Court concludes that Plaintiffs were terminated pursuant to the MBC's official policy.

     Plaintiffs claim that they were deprived of their due process rights secured by the

Fourteenth Amendment. The due process clause of the Fourteenth Amendment provides

that no state "shall deprive any person of life, liberty, or property without due process of

law." U.S. Const. amend. XIV, § 1.   Plaintiffs allege a deprivation of their constitutional

rights "including but not limited to their property and due process rights as tenured

employees of the [MBC]."  (Compl. ¶ 12, Ex. 2 to Notice of Removal [Doc. No. 1-2].)

     There are two types of rights secured by the due process clause: procedural due

process rights and substantive due process rights.  Because the Complaint does not

specify the type of due process violation that Plaintiffs allege, the Court will address the

requirements for both procedural and substantive due process claims to determine if any

genuine issues of material fact remain in dispute.

### 1.  Procedural Due Process

The Supreme Court has stated that the purpose of procedural due process rights "is straightforward: the Due Process Clause provides that certain substantive rights – life, liberty and property – cannot be deprived except pursuant to constitutionally adequate procedures."  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).   To prevail on a property interest due process claim in the employment context, a plaintiff must demonstrate that (1) the plaintiff had a protected property interest in employment, and (2) the defendants deprived plaintiff of this right without due process.  Id. at 538.

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .'" Id. (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).  Again, the Minnesota statute on which Plaintiffs rely in order to assert a property interest is the MBC statute, which provides, in relevant part:

> "[n]o employee after six months continuous employment shall be removed or discharged except upon a majority vote of the members of the municipal building commission for cause, upon written charges and after an opportunity to be heard at a hearing conducted by the municipal building commission."

Minn. Stat. § 383B.751.

As this Court observed in Dosdall, "If a city statute or ordinance establishes that a public employee may not be terminated except for good cause, that employee has a property interest in his or her job and must receive due process protection before termination."  2007 WL 14354, at *2 (citing Loudermill, 470 U.S. at 538-39); see also

Ditty, 2012 WL 3870573, at *4 (noting that ". . .public employees whose employment contracts cannot be terminated except for good cause generally have [a recognized property interest].")  As fully set forth in this Court's Order of November 2, 2011, the language of the MBC statute provides that tenured MBC employees may only be removed for cause, upon the vote of the MBC, pursuant to written charges, following a hearing.[1]  (Order of 11/2/11 at 9-10 [Doc. No. 53].)   There is no dispute that all four Plaintiffs were tenured MBC employees who did not receive a hearing regarding their termination.  Defendants also maintain that Plaintiffs were not removed for cause and

_____

[1] Defendants disagree with the Court's interpretation of the MBC statute.  (See Mem. Supp. Mot. for Summ. J. by MBC, Rybak & Goodman at 14-19; 23 [Doc. No. 91]; Mem. Supp. Mot. for Summ. J. by Opat & Stenglein at 9-13 [Doc. No. 86].)  Defendants maintain that the Court's interpretation of the statute is incorrect or that the statute is at least subject to different construction.  (Id.)  In support of their position, Defendants point to other statutes and ordinances, including the Minneapolis City Charter, ch. 19, § 11, arguing that these statutes do not require a hearing unless an employee is terminated for cause, and that the MBC statute should be similarly construed.  (Id.)  This Court's decision in Dosdall, however, suggests that Judge Tunheim interpreted § 11 of the Minneapolis City Charter consistent with the undersigned judge's interpretation of the MBC statute.  Dosdall, 2007 WL 14354, at *2.  In Dosdall, Judge Tunheim noted that if an ordinance establishes that an employee may not be terminated except for good cause, the employee has a property interest in his or her job, triggering due process protections.  Id.  Quoting § 11 of the Minneapolis City Charter, which provides that "[n]o officer or employee, after six months' continuous employment shall be removed or discharged except for cause, upon written charges and after an opportunity to be heard," Judge Tunheim found that there was no dispute that all four of the Dosdall plaintiffs were non-probationary public employees who had more than six months continuous employment with the City.  Id. (citing Minneapolis, Minn. City Charter, ch. 19, § 11.)  While the Court in Dosdall concluded that genuine issues of material fact precluded summary judgment on the plaintiffs' procedural due process claims and did not expressly find that the plaintiffs had established a protected property interest in their employment, id. at *4, Dosdall nonetheless lends support to the Court's interpretation of the MBC statute in this case.

were not entitled to a hearing under Minn. Stat. § 383B.751. (Mem. Supp. Mot. for Summ. J. by MBC, Rybak & Goodman at 23-24 [Doc. No. 91].)

Even assuming that Plaintiffs have established a cognizable property interest, "[c]ourts have consistently acknowledged that an exception to general due process requirements applies when an employee's position is eliminated as a result of a bona fide layoff, reduction in force, or reorganization." Ditty, 2012 WL 3870573, at *4 (citing Rodriquez-Sanchez v. Municipality of Santa Isabel, 658 F.3d 125, 130 (1st Cir. 2011); Gunville v. Walker, 583 F.3d 979, 989 (7th Cir. 2009)). Loudermill is therefore inapplicable when a job is eliminated due to "legitimate governmental reorganization." Dosdall, 2007 WL 14354, at *3 (citing Christian v. Cecil Cnty., 817 F. Supp. 1279, 1284 (D. Md. 1993)). In Minnesota, the reorganization exception has been "extensively developed in cases under the Veterans Preference Act." Id. "Under this line of cases, a public employer may legally abolish a position and remove a veteran if the actions were taken in good faith and were "not a mere subterfuge to oust him from his position." Id. (citing State ex rel. Boyd v. Mattson, 193 N.W. 30, 32 (Minn. 1923)).[2]

Defendants contend that Plaintiffs' positions were eliminated due to a legitimate reorganization of security services. (Mem. Supp. Mot. for Summ. J. by MBC, Rybak & Goodman at 24-25 [Doc. No. 91]; Mem. Supp. Mot. for Summ. J. by Opat & Stenglein at

---

[2] In the Order of November 2, 2011, this Court cited Boyd as well as subsequent Minnesota decisions which address whether a civil service position has been legitimately disbanded or eliminated. (Order of 11/2/11 at 12 [Doc. No. 53]) (citing State ex rel. Niemi v. Thomas, 27 N.W. 2d 155, 158 (Minn. 1947); Taylor v. City of New London, 536 N.W.2d 901, 903 (Minn. Ct. App. 1995), review denied (Minn. 1995)).

9 [Doc. No. 86].)   They argue that the provision of security services was moved from MBC staff to Hennepin County staff in order to improve security services and to possibly achieve greater economic efficiencies.  (Mem. Supp. Mot. for Summ. J. by Opat & Stenglein at 9) (citing Memo of 2/10/11 from R. Johnson to MBC Board at 1 [Doc. No. 87-4].)  The Executive Summary for the proposed shift in security services notes that "[t]he need for a higher level of basic security services has been reaffirmed by recent events. . . ." (Exec. Summ. at 1, Ex. 1 to Salter Aff. [Doc. No. 87-1].)  The document further comments that "[t]he current security staff will continue to lack the proper training and professional direction needed to be successful at their jobs.  This will leave both the City and the County at risk." (Id. at 2.)

Plaintiffs, however, argue that the evidence shows that their positions were not, in fact, truly "eliminated," but were merely transferred to security staff employed by Hennepin County.  (Pls.' Mem. Supp. Mot. for Summ. J. at 7-8 [Doc. No. 80].)  "A sham reorganization – one undertaken in bad faith or which merely reassigns a plaintiff's job duties to another employee – does not qualify for the reorganization exception." Ditty, 2012 WL 3870573, at *3 (citing Young v. City of Duluth, 386 N.W.2d 732, 737-38 (Minn. 1986); Herstrom v. Park and Recreation Bd., 248 N.W.2d 327, 328 (Minn. 1976)).

Addressing this argument in the November 2 Order, the Court quoted language in the agreement between Hennepin County and the MBC which set forth the specific services that Hennepin County staff would provide at the Minneapolis City Hall-Courthouse.  (Order of 11/2/11 at 10-11 [Doc. No. 53].)  The Court also observed that in

14

Defendants' responses to Plaintiffs' Requests for Admissions, Defendants admitted that Plaintiffs performed some of the same services for the MBC prior to their termination. (Id.) (internal citation omitted).  As noted in the November 2 Order, counsel for Defendants MBC, Rybak, and Goodman acknowledged that "Plaintiffs provided services that may be described in the same general terms as the services specified in the contract [between the MBC and Hennepin County]."  (Id. at 11) (citing Letter of 7/12/11 from T. Skarda at 2, Ex. 6 to (Second) Schermer Aff. [Doc. No. 49-6].)   The Court concluded that while the evidence suggested that Plaintiffs' positions were not truly eliminated, the record was not well-developed.  (Id. at 12-13.)  Accordingly, because the Court found that a valid excuse for non-compliance with the MBC statute could be given, it issued an alternative writ of mandamus, giving Defendants the choice to either reinstate Plaintiffs with back pay within 20 days, or to show cause why Defendants had not complied with the MBC statute.  (Id. at 14.)

Because Defendants elected to reinstate Plaintiffs with back pay, the additional proof was not submitted.   Plaintiffs argue that because Defendants did not provide additional evidence, the Court's finding of limited evidence is now the law of the case. (Pls.' Mem. Supp. Mot. for Summ. J. at 5 [Doc. No. 80].)  The Court disagrees. Defendants chose one of two options as directed by the Court – in fact, they chose the option that most promptly inured to Plaintiffs' benefit.  Accordingly, there were no findings made on the reorganization  issue.  Defendants are therefore not foreclosed from submitting arguments and evidence in defense of Plaintiffs' § 1983 claim in support of

15

their position that Plaintiffs' terminations were the result of a legitimate reorganization of security services.

In support of the instant motion filed by Commissioners Opat and Stenglein, Commissioner Opat has submitted an affidavit attesting that the MBC Board Members, who consulted with counsel, believed they were operating within the parameters of the applicable collective bargaining agreements and state law when they decided to terminate Plaintiffs and contract with Hennepin County. (Aff. of Mike Opat ¶¶ 6-17 [Doc. No. 87-6].) While this evidence essentially addresses whether Defendants acted in bad faith, it does not address the other aspect of a "sham reorganization" – the extent to which the terminated employee's position was merely reassigned elsewhere. See Ditty, 2012 WL 3870573, at *3. A disputed issue of material fact therefore remains as to whether Defendants' change in security officer services was legitimate. Defendants identified a general overlap in services provided by MBC security staff and Hennepin County security staff, but denied that Plaintiffs performed each and every service identified in MBC's security services contract with Hennepin County. (Order of 11/2/11 at 11 [Doc. No. 53]) (citing MBC Defs.' Resp. to Pls.' Req. for Admissions, No. 5, Ex. 2 to (Second) Schermer Aff. [Doc. No. 49-2]; Defs. Opat & Stenglein's Resp. to Pls.' Req. for Admissions, No. 5, Ex. 4 to (Second) Schermer Aff. [Doc. No. 49-4].) Given the conflicting evidence, the Court concludes that a genuine issue of material fact exists as to whether Defendants were terminated due to a legitimate governmental reorganization. Accordingly, the Court denies the cross motions for summary judgment on Plaintiffs'

procedural due process claim.[3]

## 2.    Substantive Due Process

As noted, Plaintiffs do not explicitly allege that Defendants violated their

substantive due process rights.   However, because of their general claim alleging a due

process violation (Compl. ¶ 12, Ex. 2 to Notice of Removal [Doc. No. 1-2]), the Court

considers whether any genuine issues of material fact are in dispute with respect to

substantive due process, to the extent such a claim is alleged.   "To state a substantive due

process claim, [a plaintiff] must allege that a government action was 'sufficiently

outrageous' or 'truly irrational, that is something more than . . . arbitrary, capricious, or in

violation of state law.'"   Young v. City of St. Charles, Mo., 244 F.3d 623, 628 (8th Cir.

2001) (quoting Anderson v. Douglas Cnty., 4 F.3d 574, 577 (8th Cir. 1993)).   Arbitrary

and capricious employment decisions resulting in the discharge of public employees are

based on reasons that are trivial or "'wholly unsupported by a basis in fact.'"   Dosdall,

2007 WL 14354, at *4 (quoting Herts v. Smith, 345 F.3d 581, 587 (8th Cir. 2003)).   As

the Eighth Circuit has observed, this conscience-shocking standard

> is a high standard, as "[s]ubstantive due process is concerned with
> violations of personal rights . . . so severe . . . so disproportionate to the
> need presented, and . . . so inspired by malice or sadism rather than a
> merely careless or unwise excess of zeal that it amounted to brutal and
> inhumane abuse of official power literally shocking to the conscience."

---

[3]  Because the Court denies Plaintiffs' summary judgment motion on this claim,
the Court also denies Plaintiffs' request for attorneys' fees under 42 U.S.C. § 1988 at this
time, which provides that a prevailing party in a § 1983 action is entitled to reasonable
attorney's fees.

Christiansen v. W. Branch Cmty. Sch. Dist., 674 F3d 927, 938 (8th Cir. 2012) (quoting

C.N. v. Willmar Pub. Schs., Indep. Sch. Dist. No. 347, 591 F.3d 624, 634 (8th Cir.

2010)).

Plaintiffs' complaint does not contain allegations demonstrating that Defendants'

actions shock the conscience, were sufficiently outrageous, or truly irrational, nor does

the record support such a finding.  Rather, the evidence in the record shows that in

deciding to terminate Plaintiffs, Defendants understood that the MBC statute could

impact their decisions and they therefore sought advice of counsel.  (Opat Aff. ¶¶ 4-5

[Doc. No. 87-6].)  In addition, as they evaluated the provision of security services,

Defendants consulted with City of Minneapolis staff.  (Letter of 12/16/09 from A.

Thomas to M. Opat & Exec. Summ., Ex. 1 to Salter Aff. [Doc. No. 87-1].)   City staff

identified three different options for providing security at the Minneapolis City

Hall/Courthouse.  (Id. at 1.)  The impetus for the change in security services, as noted

herein, was to provide improved security services. (Id., Exec. Summ. at 1.)   In outlining

the three potential options, City staff also expressed a need to "be fair to the existing

security staff and to give them an opportunity to succeed." (Id., Letter at 1.)    In

formulating the options, City staff consulted with representatives from the AFSCME

union, who "agreed that something needs to be done to stabilize and standardized [sic]

security procedures and protocols." (Id.)  The City staff therefore recommended three

options to the MBC, one of which was to shift the provision of security services to

Hennepin County.  (Exec. Summ. at 2-3 [Doc. No. 87-1].)   Ultimately, the MBC

unanimously voted to implement the Hennepin option.  (MBC Minutes of 12/16/10, Ex. 3 to Salter Aff. [Doc. No. 87-3]; MBC Minutes of 2/10/11, Ex. 5 to Salter Aff. [Doc. No. 87-5].)

Again, while Plaintiffs do not distinguish between procedural and substantive due process claims in the Complaint, to the extent that a substantive due process claim is pled, Defendants' motions for summary judgment are granted.  Defendants solicited information about how to provide improved security services and, through a deliberative process, unanimously approved the option that involved Plaintiffs' termination.  Thus, Plaintiffs have not met the higher standard necessary to support a substantive due process claim.  Id.  Because Defendants have successfully rebutted Plaintiffs' substantive due process claim, to the extent it is plead, the claim fails.

## C.      Qualified Immunity

Qualified immunity shields government officials from liability in the performance of discretionary duties.  Rush v. Perryman, 579 F.3d 908, 913 (8th Cir. 2009) (citing Bankhead v. Knickrehm, 360 F.3d 839, 843 (8th Cir. 2004)).  Qualified immunity is only available to individuals, not municipalities.  See Owen v. City of Independence, 445 U.S. 622, 638 (1980).  The qualified immunity defense is evaluated under an objective standard such that "[g]overnment officials are 'generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Bankhead, 360 F.3d at 843 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Courts consider

whether the right at issue was clearly established at the time of the alleged violation.
Pearson v. Callahan, 555 U.S. 223, 236-37 (2009).  In addition, the right must not be
clearly established in a generalized sense, but must be "clearly established in a
particularized sense relevant to the case at hand."  Mettler v. Whitledge, 165 F.3d 1197,
1202 (8th Cir. 1999) (citing Anderson v. Creighton, 483 U.S. 635, 639, (1987) ("rejecting
that plaintiffs may rely on broad, generalized rights such as 'the right to due process of
law' to show a clearly established right")).

        In seeking qualified immunity, individual Defendants Opat, Stenglein, Rybak and
Goodman contend that it was objectively reasonable to believe that Plaintiffs could be
terminated without cause and no hearing.  Defendant Opat, the MBC President, avers that
he was aware of the provisions in the MBC statute and sought advice of counsel
concerning the possible impact of the statutory provisions on the MBC's decisions
regarding Plaintiffs.  (Opat Aff. ¶¶ 3-4 [Doc. No. 92].)   Opat contends that the MBC also
considered the terms of the applicable collective bargaining agreement.  (Id. ¶ 6.)  Under
the terms of that agreement, Opat believed that the MBC had successfully negotiated the
right to lay off bargaining unit employees.  (Id. ¶ 7.)

        As to Minn. Stat. § 383B.751, Opat contends that the MBC was "advised that the
statute appeared to give employees the right to a hearing if they were removed or
discharged, but that [it] was unclear how the word 'removed' should be interpreted"
because the statute provided no definition and there were no reported cases on the issue.
(Id. ¶ 13.)  Moreover, Opat avers that the MBC believed that the removal contemplated

by the statute was only "for cause" by virtue of the statute's cross-reference to the Minneapolis civil service rules relating to cause for removal, and by virtue of similar provisions in the Veteran's Preference Act. (Id. ¶¶ 15,17.)   Defendants further contend that because no case law interpreted the MBC statute whatsoever, the contours of the statute were not "clearly established." (Mem. Supp. Mot. for Summ. J. by Stenglein & Opat at 14-15 [Doc. No. 91].)

Plaintiffs, however, argue that the relevant constitutional touchstone is whether the right of tenured public employees prior to termination was clearly established at the time of Plaintiffs' termination. (Pls.' Opp'n Mem. to Opat & Stenglein Mot. for Summ. J. at 12-13 [Doc. No. 98]) (citing Loudermill, 470 U.S. 532.)  Plaintiffs argue that Defendants' actions were "not inadvertent," noting that in March 2011, shortly after the MBC vote, counsel for Plaintiffs notified the individual MBC Commissioners that their actions in terminating Plaintiffs were "illegal" and in violation of the Supreme Court's Loudermill decision. (Pls.' Mem. Supp. Mot. for Summ. J. at 10 [Doc. No. 80]) (citing Letter of 3/8/11 from J. Schermer to MBC Board [Doc. No. 82-1].)   Plaintiffs thus contend that the law was "clearly established" and that the individual Defendants are not entitled to qualified immunity. (Id.)

Because Plaintiffs' particularized due process rights stem from Minn. Stat. § 383B.751, the Court must consider whether such rights were clearly established under this particular statute at the time of Plaintiffs' termination.  While Loudermill is long-established Supreme Court precedent, it is not a decision involving the MBC statute.  So

far as the Court is aware, no state or federal written opinion addresses the statute, with the exception of this case.   Moreover, the evidence shows that Defendants were aware of the statute and consulted with counsel to determine whether their actions were in compliance with the statute.   While the Court interpreted the statute differently than Defendants, and while the Court may disagree with some of Defendants' analogies to other statutes, the November 2, 2011 Order made clear that in light of legal precedent permitting the termination of public employees as part of legitimate workplace reorganizations, a legitimate reason for Plaintiffs' termination could be given with a fuller record.  (Order of 11/2/11 at 13 [Doc. No. 53].)   For all of these reasons, the Court concludes that the right at issue was not clearly established at the time of Plaintiffs' termination and that individual Defendants Rybak, Goodman, Opat and Stenglein are entitled to qualified immunity.  Defendants' motions for summary judgment as to the individual Defendants are therefore granted.

In a related vein, Defendant MBC argues that it is entitled to summary judgment because under § 1983, a political subdivision cannot be held liable for its employees' alleged unconstitutional acts under a theory of respondeat superior.  (Mem. Supp. Mot. for Summ. J. by MBC, Rybak & Goodman at 25 [Doc. No. 91]) (citing Monell, 436 U.S. at 691).  However, as noted herein, municipal liability may attach for a constitutional violation that was committed pursuant to an official custom, policy, or practice of the governmental entity.  Moyle, 571 F.3d at 817 (8th Cir. 2009) (citing Monell, 436 U.S. at 690-92).  "There need not be a finding that a municipal employee is liable in his or her

individual capacity before municipal liability can attach." Id. (citing Speer v. City of

Wynne, 276 F.3d 980 (8th Cir. 2002)).   Accordingly, while the individual Defendants are

entitled to qualified immunity, the Court finds that disputed issues of material fact exist as

to Plaintiffs' § 1983 procedural due process claim as it relates to the MBC itself.

Accordingly, MBC's motion to dismiss this claim is denied.

### D.     Payment of Wages Act Statutory Claim

Based on their claim for unpaid wages under the Minnesota Payment of Wages

Act, Minn. Stat. §§ 181.10 and 181.13, Plaintiffs also contend that they are entitled to a

mandatory award of attorney's fees and costs under Minn. Stat. § 181.171.  (Compl. ¶¶

16-19 [Doc. No. 1-2].)

Section 181.10 provides:

> Every employer employing any person to labor or perform service on any
> project of a transitory nature, such as the construction, paving, repair, or
> maintenance of roads or highways, sewers or ditches, clearing land, or the
> production of forest products or any other work that requires the employee
> to change the employee's place of abode, shall pay the wages or earnings of
> the person at intervals of not more than 15 days at the place of employment
> or in close proximity to the place of employment.

Minn. Stat. § 181.10.  There is no allegation in the Complaint that Plaintiffs performed

the type of seasonal or transitory work for which § 181.10 provides.  Plaintiffs' unpaid

wages claim fails, as there is no genuine dispute of material fact with respect to this

claim.  Accordingly, Plaintiffs may obtain no relief under this provision.

Section 181.13 provides for the imposition of penalties for an employer's failure to

promptly pay wages for work "actually earned and unpaid at the time of [an employee's]

discharge" upon the employee's demand.  Minn. Stat. § 181.13.  This provision is likewise inapplicable to Plaintiffs.  Plaintiffs do not allege that at the time of their termination, Defendants failed to pay them for work that they had performed.  Rather, they appear to allege that by virtue of their wrongful termination, they were not paid because they were not working.  (Compl. ¶ 17 [Doc. No. 1-2]) (alleging, "By reasons of defendants' unlawful actions, Plaintiffs have lost wages and benefits in the past and may continue to lose wages and benefits in the future.")  This does not constitute a valid claim under the Payment of Wages Act.

Because Plaintiffs have not alleged an actionable claim under the Minnesota Payment of Wages Act, they are not entitled to attorney's fees under the Act.[4]  See Minn. Stat. § 181.171.  Defendants' motions for summary judgment on Count III of the Complaint are therefore granted.

### E.    Attorney's Lien

As an alternative argument in their summary judgment motion, Plaintiffs move for the imposition of an attorneys' lien against Defendants based on Minn. Stat. § 481.13.  As

---

[4]  Plaintiffs cite to Rogers Group, Inc. v. City of Fayetteville, Arkansas, 683 F.3d 903 (8th Cir. 2012), for the proposition that the Court's issuance of an Alternative Writ of Mandamus is determinative of Plaintiffs' entitlement to seek attorney's fees and costs. (Pls.' Mem. Supp. Mot. for Summ. J. at 6-7 [Doc. No. 80].)  The Court previously addressed the Rogers Group decision in its Order of July 20, 2012 [Doc. No. 95], rejecting Plaintiffs' argument and denying Plaintiffs' request for reconsideration.  The Court acknowledges that Plaintiffs' memorandum on their summary judgment motion was filed one day prior to the Court's July 20, 2012 ruling.  The Court will not reiterate its reasoning here with respect to the Rogers Group decision, but incorporates the July 20 Order herein by reference.

noted, pursuant to this Court's ruling which granted an Alternative Writ of Mandamus, Defendants chose to reinstate Plaintiffs with back pay.  Defendants issued the back pay directly to Plaintiffs and did not include the names of Plaintiffs' counsel on the disbursed checks.  (See J. Schermer Aff. ¶ 4 [Doc. No. 81]; D. Schermer Aff. ¶ 4 [Doc. No. 82].) Defendants also contested the right of Plaintiffs' counsel to receive attorneys' fees in connection with the issuance of the Writ of Mandamus.  (Defs.' Atty's Fees Opp'n Mem. [Doc. No. 64].)   The Court ultimately agreed with Defendants, holding that attorney's fees were unavailable to Plaintiffs' counsel under Minn. Stat. § 383B.751.  (Order of 4/17/12 [Doc. No. 66].)

Plaintiffs' counsel contends that they are entitled to the imposition of an attorneys' lien based on Defendants' issuance of the back pay payments to Plaintiffs.  (Pls.' Mem. Supp. Mot. for Summ. J. at 11-12 [Doc. No. 80].)  Although Defendants have long since disbursed the payments directly to Plaintiffs, Plaintiffs' counsel argues that Defendants should make a second payment to counsel for their reasonable attorneys' fees.

The retainer agreements between Plaintiffs and their counsel provide for different payment obligations, depending on different potential litigation outcomes.  For example, if Plaintiffs were not reinstated, but received a monetary award, counsel would be paid a specific percentage of the award.  (Pls.' Retainer Agmts. ¶ 2, Exs. 12-15 to D. Schermer Aff. [Doc. Nos. 82-1].)   If Plaintiffs were reinstated and received a monetary award and/or attorneys' fees, the agreements provide:   "If I am reinstated and also receive a monetary award and/or court awarded attorneys' fees, my attorneys' fees shall be based

on the reasonable value of their services." (Id. ¶ 2.)  If Plaintiffs were reinstated but

received no other monetary award or attorney's fees, the parties agreed that Plaintiffs

would pay a discounted fee of $200.00 per hour.  (Id. ¶ 3.)  Finally, if Plaintiffs were not

reinstated and received no monetary recovery of any sort, the retainer agreements provide

that they would owe no further fees beyond the initial retainer.  (Id. ¶ 4.)

Defendants oppose Plaintiffs' motion for an attorneys' lien.  They argue that

Plaintiffs have failed to establish Defendants' failure to honor any lien rights.  (Mem. in

Opp'n to Pls.' Mot. for Summ. J. by MBC, Rybak & Goodman at 9 [Doc. No. 100].)

Moreover, they contend that Plaintiffs were aware of how the funds were to be disbursed,

and Plaintiffs' counsel have not attempted to recover their fees directly from Plaintiffs.

(Id.)

Under Minnesota's attorney's lien statute,

(a) An attorney has a lien for compensation whether the agreement for
compensation is expressed or implied (1) upon the cause of action from the
time of the service of the summons in the action, or the commencement of
the proceeding, and (2) upon the interest of the attorney's client in any
money or property involved in or affected by any action or proceeding in
which the attorney may have been employed, from the commencement of
the action or proceeding, and, as against third parties, from the time of filing
the notice of the lien claim, as provided in this section.

(b) An attorney has a lien for compensation upon a judgment, whether there
is a special express or implied agreement as to compensation, or whether a
lien is claimed for the reasonable value of the services. The lien extends to
the amount of the judgment from the time of giving notice of the claim to
the judgment debtor. The lien under this paragraph is subordinate to the
rights existing between the parties to the action or proceeding.

(c) A lien provided by paragraphs (a) and (b) may be established, and the

26

> amount of the lien may be determined, summarily by the court under this
> paragraph on the application of the lien claimant or of any person or party
> interested in the property subject to the lien.

Minn. Stat. § 481.13, Subd. 1 (2003).

"As an equitable lien, the attorney lien protects against a successful party receiving

a judgment secured by an attorney's services without paying for those services." Thomas

A. Foster & Assocs., Ltd. v. Paulson, 699 N.W.2d 1, 5 (Minn. Ct. App. 2005) (citations

omitted).   The value of the lien is typically determined pursuant to the terms of the fee

provisions in the retainer agreement.  Id. at 5-6.

The cases involving Minn. Stat. § 481.13 typically involve factual scenarios in

which clients refuse to pay their attorneys, or abscond with settlement proceeds, or the

parties collude to settle a case without counsel's notice, or some combination thereof.  For

example, in Thomas A. Foster, former clients of the attorney-petitioner had refused to pay

their counsel, arguing that he had forfeited his fees by committing legal malpractice.  Id.

at 3.  The appellate court affirmed the district court's ruling which held that the former

clients could litigate their legal malpractice claims in a separate civil action, but were

required to pay their former counsel pursuant to the attorney's lien action.  Id. at 5-8.

In Desaman v. Butler Bros., 131 N.W. 463, 464 (Minn. 1911), reversing the trial

court's denial of a petition for an attorney's lien, the Minnesota Supreme Court

commented:

> This looks like a case where an attorney has been deliberately beaten out of
> his fees by a collusive settlement in fraud of his rights.  It is hardly
> conceivable that defendant's attorneys did not know that plaintiff's attorney

> had an unpaid claim for services, and the result of the settlement would be
> to deprive him of all compensation in the case.

Id. at 464.  The court noted, however, that it was not necessary to find fraud, or find that

defense counsel had actual notice of the attorney's claim.  Id.

Similarly, in Kubu v. Kabes, 172 N.W. 496, 497 (Minn. 1919), the Minnesota

Supreme Court affirmed the trial court's award of an attorney's lien in a case in which the

parties, without their attorneys' guidance, and without the knowledge or consent of

plaintiff's attorney, "yet in good faith and without purpose to defraud him," agreed on a

settlement.   The Plaintiff did not pay his attorney for his services and the attorney

received no part of the settlement.  Id.  at 496.   The court noted,

> Although defendant had the right to make the settlement without consulting
> his attorney, and there was no purpose or design to defraud the attorney, for
> his own protection he was bound to guard against a possible second liability
> on the lien, precisely as he would in a transaction involving mortgaged
> property.  This he could have done by withholding payment until the
> attorney's lien had been released or discharged.

Id. at 497.

In Williams v. Dow Chem. Co., 415 N.W.2d 20, 25-27 (Minn. Ct. App. 1987), in

which the defendant paid a settlement without the attorney's consent, the Minnesota

Court of Appeals held that the defendant was charged with notice of the attorney's lien,

even if notice was not filed until after the settlement was paid.  Discussing the history of

cases under the attorney's lien statute, the court observed:

> Cases interpreting [the attorney's lien statute . . . ] state repeatedly that the
> payment of a claim without the plaintiff's lawyer's consent makes the
> paying defendant subject to the enforcement of the attorney's lien.  See, e.g.,

28

> Desaman, 131 N.W. at 464 (plaintiff's attorney entitled to have settlement
> of judgment set aside whether or not defendant had notice of lien); Kubu v.
> Kabes, 172 N.W. 496 (1919) (judgment reopened and attorney's lien
> enforced against defendant because a defendant is charged with notice of an
> attorney's lien and can protect itself by withholding payment until the lien is
> withdrawn or discharged); Balluff v. Balluff, 211 N.W. 462 (1926)
> (defendant charged with notice of attorney's lien, which can be enforced
> against him regardless of settlement); Barnes v. Verry, 191 N.W. 589
> (1923) (opposite party and its attorneys are required to take notice of
> statutory lien).

Id. at 26-27.  The court noted that while parties are entitled to settle their dispute without

the consent of plaintiff's counsel, "such a settlement cannot defeat the lawyer's statutory

interest in the client's cause of action."  Id.  at 27.   Rather, the defendant is charged with

notice of the existence of the lien, "and must therefore include that claim in the

settlement."  Id.  The court further observed that the rationale had been applied to a

defendant who was told by the plaintiff that plaintiff's attorney was not actually his

attorney:

> "Ordinary prudence would suggest that defendant, before it paid any
> money, should consult the attorney of record and find out what rights he
> claimed. This was not done. Defendant relied on the statements of plaintiff,
> and did not retain money enough to protect itself. The result is that it, rather
> than plaintiff's attorneys, should bear the consequences of its lack of
> caution."

Id. (quoting Georgian v. Minneapolis & St. Louis Railroad Co., 154 N.W. 962, 963

(1915)).

The attorney's lien case of Barnes v. Verry, 191 N.W. 589, 590 (Minn. 1923),

involved a client who had refused to pay his out-of-state attorney.  Among various issues

on appeal, Verry argued that because his attorney was outside of Minnesota, his attorney

could not assert a claim under Minnesota's attorney's lien statute.  <u>Id.</u>   The court held

that the attorney's residence was "unimportant," and that

> [i]t has long been settled that a party to a cause may not run away with the
> fruits of his attorney's industry and ability without satisfying the attorney's
> just demands.  The attorney has a lien on the cause of action from the time
> of the service of the summons.  It continues until it is satisfied or released.
> It is not necessary that notice of the lien be given to the opposite party or his
> attorneys.  They are required to take notice of it.

<u>Id.</u> at 590.

In addition to setting forth the basic principle that an attorney's lien attaches from

the time of service of summons, these cases demonstrate that in certain factual situations,

equity demands the imposition of an attorney's lien to ensure that attorneys are

compensated for their services.   For instance, where the plaintiff's attorney is not

involved in the negotiated settlement between plaintiff and defendant, <u>Kubu</u>, 172 N.W. at

496; where the defendant pays a settlement without the consent of defense counsel,

<u>Williams</u>, 415 N.W.2d at 25-27; or where the client refuses to pay his or her attorney,

<u>Thomas A. Foster</u>, 699 N.W.2d at 5-6, equity requires that an attorney's lien be imposed.

This is not the situation here, however.  Rather, under the unusual procedural and

legal posture of this case, Defendants' back pay disbursements to Plaintiffs were made

pursuant to the Court's Order granting the Alternative Writ of Mandamus.  Pursuant to

the Order, if Defendants chose to reinstate Plaintiffs rather than show cause regarding

noncompliance with the MBC statute, they were to reinstate Plaintiffs and provide back

pay within 20 days.   Unlike a collusive settlement, or a settlement to which counsel for

either party lacked notice, or a refusal by the clients to pay counsel, the terms of the Order were known to counsel for Plaintiffs and Defendants.  The ruling only affected Plaintiffs' claims under the MBC statute, leaving Plaintiffs' claims under § 1983 and the Payment of Wages statute pending.   While attorneys should be fairly compensated for their services, it does not appear that Plaintiffs' counsel have attempted to collect their fees from Plaintiffs.  The retainer agreements set forth the legal rights and obligations of the parties to the agreements.   Specifically, they provide that if Plaintiffs were reinstated and received some type of monetary award, counsel would be entitled to a fee based on the reasonable value of services rendered.   (Pls.' Retainer Agmts. ¶ 2, Exs. 12-15 to D. Schermer Aff. [Doc. Nos. 82-1].)  The Court finds that equity does not warrant the imposition of a lien under the particular circumstances of this case.   Accordingly, the portion of Plaintiffs' summary judgment motion based on the imposition of an attorneys' lien is denied.

**THEREFORE, IT IS HEREBY ORDERED THAT**:

1.    Plaintiffs' Motion for Summary Judgment and to Determine Attorneys' Lien [Doc. No. 78] is **DENIED**;

2.    The Motion for Summary Judgment filed by Defendants Mike Opat and Mark Stenglein [Doc. No. 84] is **GRANTED**;

3.    The Motion for Summary Judgment filed by Defendants Municipal Building Commission ("MBC"), R.T. Rybak, and Lisa Goodman [Doc. No. 89] is **GRANTED in part** as it relates to Defendants Rybak and Goodman,

and **DENIED in part** as it relates to Defendant MBC;

4.      Count I of the Complaint (Petition for Writ of Mandamus) is **DISMISSED**

**AS MOOT**; and

5.      Count III of the Complaint (Claim for Unpaid Wages) is **DISMISSED**

**WITH PREJUDICE**.[5]

Dated: January 31, 2013

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge

---

[5] Accordingly, this matter will proceed to trial only on the following claim: Count II § 1983 (procedural due process) claim against Defendant MBC.